823 So.2d 640 (2001)
Ex parte MILTOPE CORPORATION.
(In re Jefferson Daniel Kaylor v. Miltope Corporation et al.)
1001031.
Supreme Court of Alabama.
December 14, 2001.
*641 E. Britton Monroe and Thomas J. Skinner IV of Lloyd, Gray & Whitehead, P.C., Birmingham, for petitioner.
Rhon E. Jones and Scarlette M. Tuley of Beasley, Allen, Crow, Methvin, Portis & Miles, P.C., Montgomery, for respondent.
SEE, Justice.
Miltope Corporation ("Miltope") is a manufacturer of a variety of defense industry and nondefense industry electrical and technical products. One of its defense-industry products is a SPORT computer,[1] designed for field use by personnel of the United States Army. In 1995, Miltope and the United States Army entered into a contract pursuant to which the Army agreed to purchase up to $80,000,000 *642 worth of SPORT computers over a five-year period.
In September 1998, approximately three years after Miltope and the Army had executed their contract, Jefferson Daniel Kaylor, Jr., the plaintiff in the underlying action, accepted employment with Miltope. When he accepted employment with Miltope, Kaylor was aware that Miltope had entered into a contract to provide SPORT computers to the Army. Kaylor contends that his employment contract guaranteed him a two percent commission on each SPORT computer sold to the Army during the period of his employment. Miltope denies that contention; it states that Kaylor was not guaranteed under his employment contract any commission on the sale of SPORT computers to the Army.
On December 31, 1999, Kaylor resigned his employment with Miltope. On May 16, 2000, he sued Miltope, alleging breach of contract, fraudulent misrepresentation, fraudulent suppression, and fraudulent deceit. All four claims are based on his contention that he was entitled, under his employment contract with Miltope, to a two percent commission on SPORT computers sold by Miltope to the Army.
During discovery, Kaylor demanded of Miltope discovery of, among other documents, the following documents:
(1) "all file(s) referencing bookings or orders received by [Miltope] since October 19, 1998"[2];
(2) "all documents which relate, refer to or reflect meetings of Miltope's Board of Directors, division reviews or the equivalent between October 28, 1998 and the present, including, but not limited to all meeting minutes, notes and materials presented during such meetings"; and
(3) "all documents which relate, refer to or reflect projected and actual gross and net margins and profits for Miltope regarding the SPORT and ICE Integration Programs since negotiations for those accounts began."[3]
Miltope objected to those production requests. Following a hearing, the trial court ordered Miltope to produce the requested documents; however, the trial court entered a protective order limiting the uses and dissemination that Kaylor and his attorneys could make of the documents. The trial court ordered that the dissemination of information identified as confidential or protected be restricted to (1) the court, (2) those to whom the court ordered disclosure and those to whom the parties agreed there should be disclosure, (3) counsel of record, (4) staff of counsel of record for purposes of trial preparation who likewise agreed to be bound by the order, (5) expert witnesses who were not employees of either party and who likewise agreed to be bound by the order, (6) the parties and those employed by the parties to assist in the litigation who likewise agreed to be bound by the order, (7) deponents, witnesses, and potential witnesses who likewise agreed to be bound by the order, (8) jurors, (9) persons attending the trial, and (10) court reporters for the deposition and the trial. The trial court further ordered that the confidential or protected information was to be used "solely for the purposes of this litigation, not for any business, commercial, or other purpose," and that Kaylor's attorneys were to be the custodians of the confidential documents *643 and were to return them to Miltope when the litigation was over.
Miltope produced copies of all orders by the Army for SPORT computers from October 19, 1998, to December 31, 2000. Miltope also produced redacted portions of the meeting minutes of its board of directors in which the board referred to or mentioned Kaylor or his employment. Miltope produced no documents responsive to Kaylor's request for documents relating to its "actual gross and net margins and profits" resulting from the sale of the SPORT computers to the Army.
Miltope moved the trial court to reconsider the portions of its order that required it to produce (1) all orders Miltope received from October 19, 1998, through December 31, 2000 (other than the Army's orders for the SPORT computers, which had already been produced); (2) minutes of all board of directors' meetings from October 19, 1998, through December 31, 2000 (other than those portions that related to or mentioned Kaylor, which had already been produced); and (3) financial information regarding Miltope's gross and net profit margins on the purchase of SPORT computers by the Army. The trial court denied Miltope's motion, and this petition for the writ of mandamus followed.
A writ of mandamus is an extraordinary remedy requiring a showing that there is: "(1) a clear legal right in the petitioner to the order sought; (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; (3) the lack of another adequate remedy; and (4) properly invoked jurisdiction of the court." Ex parte Alfab, Inc., 586 So.2d 889, 891 (Ala.1991). Discovery matters are within the sound discretion of the trial court, and this Court will not reverse a trial court's rulings on a discovery issue unless the trial court has clearly abused its discretion. Home Ins. Co. v. Rice, 585 So.2d 859 (Ala.1991).
Rule 26(b), Ala. R. Civ. P., defines the scope of discovery as follows: "Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action." Even material that would be inadmissible at trial is discoverable, provided that the material "appears reasonably calculated to lead to the discovery of admissible evidence." Id. In determining whether the information sought by a party "appears reasonably calculated to lead to the discovery of admissible evidence," a court must consider the nature of the plaintiff's claim and whether, in light of the claim, the plaintiff has demonstrated a particularized need for the discovery being sought. See Ex parte First Nat'l Bank of Pulaski, 730 So.2d 1160, 1162 (Ala.1999).
Miltope argues that the trial court's order requiring it to produce orders from its customers other than the Army for products other than SPORT computers is overly broad because it requires Miltope to produce evidence not reasonably calculated to lead to the discovery of admissible evidence. Kaylor seeks damages for Miltope's alleged failure to pay him a two percent commission on SPORT-computer orders placed by the Army during the period he was employed by Miltope. He does not, by his own admission, contend that he is entitled to any commission on Miltope's sales of SPORT computers to any other customers or on sale of any other product. Thus, if Kaylor's complaint asserted only a breach-of-contract claim, the documents Kaylor has requested would be irrelevant to that claim.
Kaylor points out, however, that he has also asserted fraud claims, and he argues that, if produced, the documents relating to the Amry's purchase of other *644 products or other customers' purchases of SPORT computers could lead to his discovery of a pattern of behavior by Miltope in which it fraudulently misrepresented to its employees, or suppressed, information concerning commissions to which they were entitled. "`[E]vidence of prior similar acts is admissible to show fraud, scheme, motive, or intent.'" Ex parte Clarke, 582 So.2d 1064, 1068 (Ala.1991), quoting Pugh v. Southern Life & Health Ins. Co., 544 So.2d 143, 145 (Ala.1988).
Miltope counters that, even if the production requests are "reasonably calculated to lead to the discovery of admissible evidence," the trial court should have denied Kaylor's motions to compel because, it says, the documents contain sensitive, confidential material and if they are released Miltope's competitors could gain a commercial advantage. More specifically, Miltope argues that Kaylor is now employed by one of its competitors and that even releasing the information to Kaylor will give his employer a commercial advantage over Miltope.
The Alabama Rules of Evidence provide that trade secrets are, in some cases, privileged and not admissible at trial.[4] It is Miltope's responsibility to show that the "matter inquired about does indeed constitute a trade secret and that [Miltope] would be injured by disclosure." Charles W. Gamble, McElroy's Alabama Evidence § 361.02(4) (5th ed.1996).
The information Miltope seeks to avoid disclosing qualifies as a trade secret. Section 8-27-2(1), Ala.Code 1975, states that a "trade secret" is information that:
"a. Is used or intended for use in a trade or business;
"b. Is included or embodied in a formula, pattern, compilation, computer software, drawing, device, method, technique, or process;
"c. Is not publicly known and is not generally known in the trade or business of the person asserting that it is a trade secret;
"d. Cannot be readily ascertained or derived from publicly available information;
"e. Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy; and
"f. Has significant economic value."
We find that the orders received by Miltope and the minutes of the board constitute trade secrets. Both are used in business; both are embodied in a compilation; neither is publicly known; neither can be readily ascertained from public knowledge; both were secreted from the public; and both have economic value.
The danger of entrusting Kaylor with Miltope's trade secrets is that doing so could harm Miltope and there may be no sanction sufficient to protect Miltope in the event Kaylor fails to abide by the terms of the protective order; there also may be no system of monitoring what Kaylor or his current employer, a business in competition with Miltope, do with the information they would be able to glean from this expansive discovery. The Ohio Court of Appeals noted: "If a trial court orders the discovery of trade secrets and such are disclosed, the party resisting discovery will *645 have no adequate remedy on appeal. The proverbial bell cannot be unrung and an appeal after final judgment on the merits will not rectify the damage." Gibson-Myers & Assocs. v. Pearce, (No. 19358, Oct. 27, 1999)(Ohio Ct.App.1999)(unpublished).[5] Trade secrets should receive greater protection from discovery because they "derive[ ] economic value from being generally unknown and not readily ascertainable by the public." Nester v. Lima Mem'l Hosp., 139 Ohio App.3d 883, 888, 745 N.E.2d 1153, 1157 (2000)(Walters, J., dissenting). "Once the information becomes available through the discovery process, a subsequent appeal, even if successful, cannot restore the valuable secretive nature." Id. Disclosure of a trade secret could cause "irreparable harm." Binkley v. Allen, (No. 2000-CA-00160, Feb. 5, 2001) (Ohio Ct.App.2001)(unpublished).[6] Although the trial court's protective order contains some safeguards, the probable dispersion of the trade secrets is practically unlimited, and the safeguards are clearly inadequate. We conclude that the trial court abused its discretion in compelling Miltope to produce the requested documents, because of the risk of harm to Miltope caused by disclosure of its trade secrets.[7]
Miltope also argues that the minutes of its board of directors' meetings include trade secrets and, thus, that the trial court erred in compelling it to produce those minutes. We find Miltope's argument persuasive. The trial court's protective order does not adequately safeguard the confidentiality of the minutes. Thus, we conclude that the trial court abused its discretion in compelling Miltope to produce the requested minutes of its board of directors.
Miltope's final argument is that the trial court erred in ordering it to reveal what it says is trade-secret information concerning its gross and net profit on the SPORT-computer account. Miltope argues that Kaylor "is simply seeking pretrial discovery on the issue of wealth," citing Ex parte Hsu, 707 So.2d 223 (Ala. 1997), for the proposition that "`evidence of a defendant's wealth is highly prejudicial and, therefore, inadmissible [during trial.]'" Id. at 225, quoting Southern Life & Health Ins. Co. v. Whitman, 358 So.2d 1025, 1026 (Ala.1978). However, the question presented here is not whether the material is admissible, but whether it is discoverable. See Rule 26(b)(1), Ala. R. Civ. P. Moreover, Kaylor points out that Miltope "has a great number of customers, and Kaylor would be unable to ascertain information regarding Miltope's overall wealth or net worth based simply upon figures relating to [the] SPORT [program]." Kaylor argues, instead, that the information could reveal Miltope's motives, *646 if any, for failing to pay Kaylor the commission he claims he is owed. Miltope, however, has met its burden of showing that the trial court abused its discretion in ordering Miltope to produce the requested documents because of the irreparable harm the disclosure of its trade secrets could do to Miltope.
PETITION GRANTED; WRIT ISSUED.
HOUSTON, BROWN, WOODALL, and STUART, JJ., concur.
LYONS and HARWOOD, JJ., concur in the result.
MOORE, C.J., and JOHNSTONE, J., dissent.
LYONS, Justice (concurring in the result).
I concur in the result. As for the orders dealing with products other than the product that is the basis of the action, I am not persuaded that the discovery of this information is "reasonably calculated to lead to the discovery of admissible evidence." Rule 26(b)(1), Ala. R. Civ. P. Until some independent basis exists for Kaylor's speculation in his fraud claimpleaded without the specificity with which fraud claims should be pleadedthat other employees might have had similar arrangements and might have been fraudulently denied compensation to which they were entitled, the connection between this action and the requested discovery is not reasonable. Further, Kaylor's contention that the information he seeks is discoverable because it relates to his inability to claim commissions on "house accounts" also fails, because his complaint seeks a commission for sales not classified as "house accounts." Again, the connection is not reasonable.
Turning to the minutes of the board, the affidavit of Ed Crowell, vice president of administration for Miltope, described the minutes as follows:
"Miltope Corporation holds annual meetings of its Board of Directors and other meetings as provided in the company's By-Laws or as may be required or called. At these Board of Directors meetings, internal information relating to Miltope Corporation's business strategies and plans as well as the financial operations and condition of the company are discussed. No personnel matters are discussed in these Board meetings.
"The information discussed includes how Miltope Corporation will operate and compete in the competitive bidding environment of military contracting. The Directors discuss (1) information that is intended for use in the military contracting business, (2) methods, techniques and processes relating to competitive bidding on military contracts, (3) information that is not publicly known[,] as Miltope Corporation is not a publicly traded entity and the information is unique to Miltope's methods, techniques and processes for engaging in business in the highly competitive military contracting industry, (4) information relating to Miltope's operations, strategic plans and bidding processes that cannot be ascertained from publicly available information, (5) information that is and has always been maintained confidentially by Miltope, and (6) information which has significant economic value to Miltope in the form of military contracts.
"The Board of Directors meetings of Miltope Corporation are private and confidential, and the minutes of the meetings are and always have been maintained confidentially and are not open to general review. The disclosure of these internal minutes would help competitors of Miltope Corporation compete against Miltope Corporation in bids future [sic] for military contracts. As *647 such, this information is of substantial economic value to Miltope Corporation, and the disclosure of this information would have a substantial and detrimental impact on the financial operations and condition of the company."
The requisite reasonable connection between the type of information described by Crowell as being included in the minutes and the subject matter of this lawsuit is lacking.
Finally, the information concerning gross and net profit is not reasonably calculated to lead to admissible evidence when Kaylor is claiming a percentage of gross bookings. Information as to net worth is not generally admissible. See Charles W. Gamble, McElroy's Alabama Evidence § 189.05(1) (5th ed.1996). Kaylor's suggestion that profit levels are admissible to show motive suggests that some rational basis exists to contradict the axiomatic conclusion that businesses are operated to make a profit. Allowing discovery of profits to develop evidence of motive at this stage of the proceedings would circumvent Alabama's long-standing prohibition against the admissibility of evidence of a party's wealth or poverty. See Marks v. Intergraph Corp., 740 So.2d 1066 (Ala.1999).
HARWOOD, J., concurs.
JOHNSTONE, Justice (dissenting).
I respectfully dissent. While I agree that the discovery materials at issue do contain trade secrets, I do not agree that issuing this writ of mandamus is the proper remedy.
Miltope submitted to the trial court an affidavit that proves that the materials contain trade secrets. Kaylor does not dispute that the materials contain trade secrets. Certain information within the materials constitutes trade secrets because (1) it is secret, (2) it is valuable, and (3) its value depends on its secrecy, that is, its nondisclosure.
Trade-secret status, however, is not ground for denying discovery unless the secrecy cannot be adequately protected by a protective order. See Rule 507, Ala. R. Evid. See also 3 Jack B. Weinstein, Weinstein's Federal Evidence § 508.05[1] and § 508.07[1] (2d ed.2001). While the protective order entered by the trial court in this case would seem to allow disclosure of the trade secrets to too many people, Miltope has not objected to the catalogue of persons the protective order would allow to review the trade secrets. Nor has Miltope applied to the trial court for a reduction in the number of people who could learn the trade secrets or for a more rigorous form of protection, such as in camera review. Rather, Miltope has tried to use its trade-secret claim in order to prevent discovery of the materials containing trade secrets altogether. Miltope is not entitled to avoid discovery of the trade secrets altogether inasmuch as, as the main opinion recognizes, the materials are relevant to Kaylor's fraud claims.
As the main opinion correctly observes, a party's right to a writ of mandamus is dependent on "the lack of another adequate remedy." Ex parte Alfab, Inc., 586 So.2d 889, 891 (Ala.1991). Miltope has not even tried to demonstrate to the trial court or to this Court that a more restrictive or rigorous protective order would not adequately protect the trade secrets. Nor has Miltope sought a more restrictive or rigorous protective order from the trial court. Therefore, although the trial court itself has entered a protective order which may be too lax, Miltope has not exhausted its remedies as required by Ex parte Horton Homes, Inc., 774 So.2d 536 (Ala.2000), and Ex parte Reynolds Metals Co., 710 So.2d 897 (Ala.1998), by seeking a protective order *648 sufficiently restrictive or rigorous to protect the trade secrets. Therefore the petition for a writ of mandamus should be denied.
NOTES
[1] "SPORT" is an acronym for Soldiers' Portable On-System Repair Tool.
[2] The date Kaylor received a letter confirming his employment with Miltope.
[3] "ICE Integration Program" refers to an agreement between Miltope and the Army pursuant to which Miltope would install hardware and software provided by the Army on the SPORT computers that Miltope provided to the Army.
[4] Rule 507, Ala. R. Evid., provides:

"A person has a privilege, which may be claimed by the person or the person's agent or employee, to refuse to disclose and to prevent other persons from disclosing a trade secret owned by the person, if the allowance of the privilege will not tend to conceal fraud or otherwise work injustice. If disclosure is directed, the court shall take such protective measures as the interests of the holder of the privilege and of the parties and the interests of justice require."
[5] Although Pearce is not published in either Ohio Appellate Reports or Northeastern Reporter, the opinion appears on electronic databases. As an unpublished opinion, Pearce carries no precedential value in the State of Ohio. See Rule 2, Ohio Supreme Court Rules for the Reporting of Opinions. Although the Alabama appellate courts publish all opinions, Alabama has a similar rule regarding unpublished orders and judgments. See Rule 53(d), Ala. R.App. P. Pearce's unpublished status, however, does not preclude us from using it in our analysis. No opinion from another state court is binding on the courts of Alabama, but we often cite such an opinion as persuasive authority. We cite Pearce because it is a well-reasoned opinion that addresses the precise issue before us.
[6] See note 5.
[7] We note that Kaylor offers only the possibility that, if his discovery motion is granted, he will find that Miltope engaged in a pattern of misrepresentation to other employees. This mere possibility does not outweigh the likelihood of irreparable harm to Miltope.