[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 1030 
W.L. Halsey Grocery Co. ("Halsey"), the plaintiff in an action pending in the Madison Circuit Court, seeks a writ of mandamus compelling the trial court to vacate its order of January 30, 2004, which eliminated a protection afforded to Halsey by a confidentiality agreement entered into between Halsey and the defendants, the Merchants Company a/k/a The Merchants Company, Inc. ("Merchants"), and Harold L. Henson, Stephen C. Neeley, Randy H. Lindsey, and Charles Cornelison (the individual defendants are hereinafter collectively referred to as "the employee defendants"). We grant the petition and issue the writ.
Halsey has been in the wholesale food business since 1879, marketing food products in Alabama and Tennessee. The employee defendants are former Halsey employees who were hired by Merchants. The employee defendants had each executed a nonsolicitation agreement when they were employed by Halsey. After Merchants had hired the employee defendants, Halsey sued Merchants and the employee defendants, alleging that the employee defendants had breached their fiduciary duties to Halsey (disclosing or using Halsey's proprietary and confidential information and trade secrets to Halsey's competitive disadvantage) and had breached their nonsolicitation agreements by soliciting Halsey's customers during a one-year nonsolicitation period; that Merchants had tortiously interfered with the nonsolicitation agreements between Halsey and each employee defendant; and that Merchants and the employee defendants had tortiously interfered with Halsey's business relations with Halsey's customers, had misappropriated Halsey's trade secrets, and had conspired to do the foregoing.
Discovery began and the defendants submitted to Halsey extensive interrogatories and requests for production, which included a request that Halsey produce its financial statements; its federal and state income tax returns for the years 1999-2003; any computer files related to Halsey's customers or sales for the years 1999-2003; Halsey's general ledger for the years 2000-2003; Halsey's balance sheet, audited financial statements, and tax returns for its year end for the years 1998 to date; and Halsey's complete customer list with historical sales information for each month from 1999 to date of production, identified by the salesman assigned to that customer.
Because the information sought by the defendants included highly sensitive customer research, the parties negotiated a confidentiality agreement to protect Halsey's *Page 1031 
customer information and any trade secrets and to prevent a party from using discovery to gain an unfair competitive advantage. The "Confidentiality Agreement and Protective Order" ("the agreement") permitted the designation of sensitive data as "protected information." This "protected information" was classified as either "confidential" or "restricted confidential." "Confidential" information was defined in the agreement as information a party believed revealed
 "business, financial, competitive, proprietary, trade secret or other information otherwise unavailable to the public, the disclosure of which would cause the producing Party competitive harm or is of a sensitive nature about the Party . . . and which is not generally made publicly available."
(Emphasis added.) The agreement defined "restricted confidential" information as information a party believed revealed "business, financial, competitive, proprietary, trade secret or other information of a highly sensitive nature about the Party." (Emphasis added.) While the agreement allowed "officers, directors, and employees of any Party" access to confidential information, those persons were denied access to restricted confidential information. Only persons such as outside counsel for the parties, independent experts, and consultants had access to both confidential and restricted confidential information. Information not classified as confidential or restricted confidential was not protected from public access.
In addition, paragraph 15 of the agreement stated:
 "The designation of Protected Information by the producing Party or Person may be modified or eliminated . . ., provided that the Parties or Persons must negotiate in good faith regarding any disputes over the designation of Protected Information before presenting the dispute to the Court.
". . . .
 "If the Parties or Persons cannot agree as to the designation of any particular information or material, the receiving party or person may move the Court to downgrade or eliminate the Confidential or Restricted Confidential designation. The burden of proving that the information has been properly designated shall be on the Party or Person who made the original designation."
(Emphasis added.)
The trial court approved the agreement. Halsey then filed its responses to the defendants' requests for production. Although objecting to some requests, Halsey produced 6,340 pages of documents. Halsey designated most of those documents, approximately 5,879 pages, as "highly confidential," a term that all parties agree is the equivalent of "restricted confidential." Halsey designated as "highly confidential" documents such as its customer price volume report, financial statements, tax returns, and sales evaluations of the company as a whole and of individual salesmen. The consumer price volume report is a spreadsheet-style document spanning 4,723 pages, which constitutes approximately 75% of the pages produced and approximately 80% of the pages designated "highly confidential."
On Wednesday, January 7, 2004, counsel for Merchants faxed a letter to Halsey's counsel.[1] The letter charged Halsey's counsel with abusing the "highly confidential" *Page 1032 
classification. The penultimate paragraph of the letter states:
 "We have a hearing on Friday [January 9, which was continued until January 30] and I fully intend to bring this subject up to the Judge. I will be filing a very short motion tomorrow and serving it by fax. Accordingly, I would appreciate your response if you will voluntarily withdraw these designations prior to noon on Thursday, January 8."
The next day, January 8, Merchants filed a motion requesting that the court "remov[e] the highly confidential designation fromall of the documents produced" (emphasis added). The motion further stated, in paragraph 6:
 "Also attached as Exhibit B is correspondence sent to counsel for the plaintiff requesting, pursuant to the terms of the [agreement], that the designations be removed. At this point in time, they have refused to remove those designations or to amend any of them."
Attached as Exhibit B to that motion was the letter faxed to Halsey's counsel the previous evening. Halsey responded to Merchants' motion on January 26. In its motion, Halsey argued that Merchants had failed to "negotiate in good faith" as required by the agreement and also argued that many of its designations of highly confidential material were meritorious.[2] On January 29, 2004, counsel for Merchants sent another letter to counsel for Halsey. This letter concerned disputed discovery requests made by Halsey of Merchants. On page 3 of this letter, counsel for Merchants stated, "Merchants retains the right to designate all or a portion of the referenced documents `Confidential' or `Restricted Confidential' in accordance with [the agreement]."
On January 30 a hearing was held concerning, among other issues, Merchants' motion to alter Halsey's designations. According to Merchants' own brief to this Court, it argued at the January 30 hearing that "the two-tiered Protective Order [i.e., the agreement classifying documents as `confidential' and `restricted confidential'] was unworkable in its current form" (emphasis added). That day, the trial court ordered that the agreement be amended "to allow access to parties in this lawsuit to documents designated as highly confidential. This allows [Halsey] to prove damages prospectively and allows the Defendants to participate in the defense of their case."
On February 6, 2004, Halsey filed a motion to reconsider the trial court's order modifying the agreement, which the trial court denied the same day. However, the trial court granted Halsey's motion seeking to extend the time in which the documents designated as "highly confidential" were to be nondisclosable. The trial court ordered that time be extended "until Halsey's petition is ruled on by the Alabama Supreme Court." Halsey timely filed this petition for the writ of mandamus on March 10, 2004.
 Standard of Review
Although this Court "cannot afford immediate mandamus review of every discovery order," Ex parte Ocwen Federal Bank, FSB,872 So.2d 810, 813 (Ala. 2003), where a petitioner alleges that a privilege is disregarded, id., or that a discovery order is so broad that the costs of production outweigh the benefits, id., this Court will examine such a petition for mandamus. In determining whether mandamus relief *Page 1033 
is appropriate in such cases, we are mindful of the following:
 "`Mandamus is a drastic and extraordinary writ, to be issued only where there is (1) a clear legal right in the petitioner to the order sought; (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; (3) the lack of another adequate remedy; and (4) properly invoked jurisdiction of the court.'"
Ex parte Perfection Siding, Inc., 882 So.2d 307, 309-10 (Ala. 2003) (quoting Ex parte Integon Corp., 672 So.2d 497, 499 (Ala. 1995)). In reviewing a petition for a writ of mandamus concerning a trial court's rulings on a discovery matter, the issue is whether in ruling on the discovery matter the trial court exceeded its discretion. Ex parte Ocwen, 872 So.2d at 813.
 Analysis
Halsey's first argument is that in amending the agreement to allow the parties access to information designated as restricted confidential the trial court exceeded its discretion. Halsey argues that it negotiated the agreement with Merchants and the employee defendants in good faith and that the parties were entitled to the benefit of their bargain. Moreover, Halsey contends, the trial court acted sua sponte in amending the agreement. The defendants argue that the trial court gave them the exact relief they requested and that the trial court was entirely within its discretion in amending the agreement to allow the defendants access to information classified as restricted confidential.
As noted above, the defendants requested the trial court to "remov[e] the highly confidential designation from all of the documents produced" (emphasis added). The trial court's ruling accomplished just that. The court clearly was not acting sua sponte in issuing its order.
In its motion to reconsider filed in the trial court, Halsey's first argument was that the defendants failed to negotiate with Halsey in good faith before seeking the trial court's intervention in amending the agreement. Given the events detailed above, the stark reality appears to be that the defendants failed to act in good faith and that the trial court abdicated its role in holding the parties to the terms of the agreement. However, because Halsey did not raise this argument on appeal, we are unable to grant the petition on this basis. Smith v. EquifaxServs., Inc., 537 So.2d 463, 465 (Ala. 1988).
We undertake, then, to evaluate the trial court's ruling independently of the issue of good-faith negotiation. Presuming that the defendants' actions constituted good-faith negotiation with Halsey, we cannot say that the trial court exceeded its discretion. The agreement clearly allows the trial court to "downgrade or eliminate the Confidential or Restricted Confidential designation," and places the burden of proof as to whether the designation of certain documents should be downgraded or eliminated on the producing party, in this case Halsey. Given this, we certainly cannot say that Halsey has demonstrated a "clear legal right" to relief on the basis of the agreement.
In the alternative, Halsey argues that the trial court's order cannot stand because, it says, the order would allow the disclosure of trade secrets, which Halsey argues are protected by the Alabama Trade Secrets Act, Ala. Code 1975, §§ 8-27-1 through8-27-6 ("the ATSA"), especially following this Court's decision in Ex parte Miltope Corp., 823 So.2d 640 (Ala. 2001). InMiltope, the trial court ordered Miltope Corporation to make various documents available to various people, including an adverse party, who had left Miltope *Page 1034 
Corporation to work for a competitor. 823 So.2d at 642. We held that even though the plaintiff agreed not to use the information for competitive purposes, much of the information was Miltope Corporation's trade secret and deserved greater protection than what the trial court had afforded. Miltope,823 So.2d at 644-45.
The ATSA defines a trade secret as information that:
 "a. Is used or intended for use in a trade or business;
 "b. Is included or embodied in a formula, pattern, compilation, computer software, drawing, device, method, technique, or process;
 "c. Is not publicly known and is not generally known in the trade or business of the person asserting that it is a trade secret;
 "d. Cannot be readily ascertained or derived from publicly available information;
 "e. Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy; and
"f. Has significant economic value."
Ala. Code 1975, § 8-27-2.
In the case before us, the information Halsey seeks to protect appears to meet the definition of a trade secret. The documents designated as highly confidential are used to forecast sales, to determine what prices should be quoted to certain customers, to create financial statements, to pay taxes, and to conduct other standard business practices. Clearly they are "used or intended for use in a trade or business." Ala. Code 1975, § 8-27-2(a).
The consumer price volume report and Halsey's financial statements, tax returns, and sales evaluations are all created by assembling information from different sources and combining them into one document — be it a report, a statement, or a tax return. This appears to meet the definition of a "compilation" and to fulfill the second element of a trade secret under the ATSA. Ala. Code 1975, § 8-27-2(b).
Halsey refers us to numerous documents and to an affidavit swearing that the information contained in Halsey's files is "not publicly known and is not generally known" by those in the grocery business. Ala. Code 1975, § 8-27-2(c). While a diligent competitor could determine individual figures for certain of Halsey's customers, the average businessman in the grocery trade will not know all the information that Halsey has amassed.
In addition, the information Halsey seeks to protect "[c]annot be readily ascertained or derived from publicly available information." Ala. Code 1975, § 8-27-2(d). As Halsey explains, much of the information that it has gathered is based upon its own transactions with customers, not upon a publicly advertised "price" that Halsey charges or that a customer will pay.
When Halsey hires a new employee, Halsey requires the employee to sign a confidentiality and nonsolicitation agreement. This nonsolicitation agreement explicitly informs the employee that much of the information to which the employee will have access is "trade secret and other confidential information." In the nonsolicitation agreement the employee agrees to keep such information confidential and not to use such information to compete with Halsey. After each of the employee defendants left Halsey's employ to join Merchants, Halsey's president and chief executive officer sent a letter to each employee defendant, reminding him of the terms of the nonsolicitation agreement. Halsey's actions in requiring employees to sign the nonsolicitation agreement informing the employees of the confidential nature of the information to which the employee will be exposed sufficiently reflect "efforts that *Page 1035 
are reasonable under the circumstances to maintain [the] secrecy" of Halsey's information. Ala. Code 1975, § 8-27-2(e).
Finally, the efforts to preserve the confidentiality of this information — as embodied in the nonsolicitation agreement, the agreement, and this petition for mandamus — not to mention the sheer utility of Halsey's actual information, make clear that this information "[h]as significant economic value." Ala. Code 1975, § 8-27-2(f).
Because this information appears to meet the definition of a "trade secret" in the ATSA we rely upon Ex parte Miltope for the resolution of this issue. Like Miltope Corporation, Halsey has been ordered by the trial court to produce information that can be disclosed to, among others, adverse parties to the litigation. Like the defendant in Miltope, the employee defendants left Halsey to work for a competitor. In Miltope, we ordered trade-secret protection despite a protective order prohibiting the defendant from using discovered information for competitive purposes. Miltope, 823 So.2d at 642. Here, because the trial court removed the protections from all documents designated as highly confidential, this information is no longer insulated from use by the defendants for competitive purposes.
For these reasons, we conclude that Halsey's information is of similar value to the information at stake in Miltope and that it deserves similar protection. Consequently, we hold that much of Halsey's information is a trade secret and that it is entitled to protection in excess of that provided in the normal discovery process. However, because we do not have the documents before us, we do not hold that all of the documents contain trade-secret information entitled to heightened protection; rather, we order the trial court to conduct a hearing to determine which documents are entitled to trade-secret protection and which documents are not entitled to that protection.
Rule 507, Ala. R. Evid., provides that when a person is ordered to disclose a trade secret, the trial court "shall take such protective measures as the interests of the holder of the privilege and of the parties and the interests of justice require." Of course, the trial court has considerable discretion in how it protects these interests.
Because Halsey has shown that it has a clear legal right to the relief sought, we grant the petition and order the trial court to protect Halsey's trade-secret information to the maximum extent practicable, striking a fair and reasonable balance between Halsey's legitimate interest in confidentiality and the defendants' equally legitimate interest in defending the claims against them with the benefit of discovery.
PETITION GRANTED; WRIT ISSUED.
NABERS, C.J., and SEE, LYONS, BROWN, JOHNSTONE, HARWOOD, WOODALL, and STUART, JJ., concur.
[1] Halsey alleges that this letter was faxed at 5:33 p.m. on January 7. Merchants does not dispute this allegation.
[2] However, Halsey did remove the highly confidential designation from 320 pages of documents.