Dorothy Mae Scott petitions this Court for a writ of mandamus to compel the Honorable Elwood L. Hogan, Judge of the Circuit Court of Mobile County, to vacate a protective order issued by him and to allow the petitioner to proceed under the rules of discovery.
This controversy arose from a suit filed by petitioner on August 14, 1980, against the other respondents herein, for the wrongful termination of her employment. On February 13, 1981, the trial judge issued a protective order staying the taking of depositions. On March 11, 1981, the trial judge granted a motion to dismiss the petitioner's complaint on the ground that it failed to state a claim upon which relief could be granted. This latter decision was reversed on appeal. Scott v. Lane,409 So.2d 791 (Ala. 1982). After remand, the petitioner, for the second time, noticed the taking of depositions of the defendants, who are the other respondents in the instant proceeding. On March 10, 1982, the trial judge again granted a protective order.
The answer to the petition for mandamus contains the following:
 "A. These Respondents admit that on March 10, 1982, the trial judge entered an order temporarily staying discovery until after the trials of Ikner v. Doctors Hospital of Mobile, et al., Mobile County Circuit Court Action No. CV-79-000333 ("Ikner"), scheduled for May 3, 1982, before the same trial judge who entered the protective order herein, and Hodge v. Lane, et al., Mobile County Circuit Court Action No. CV-79-001289 ("Hodge"), scheduled for June 14, 1982, OR until July 1, 1982, whichever occurs first.
 "B. These Respondents aver that the trial of this Dorothy Scott case is not yet scheduled and will not be set before the fall of 1982, at the earliest, and, hence, the temporary stay of discovery was without prejudice to the petitioner Dorothy Scott.
 "C. These Respondents aver that the Ikner and Hodge
cases are multi-million dollar malpractice actions against the Petitioner, these Respondents and others, alleging brain damage, resultant coma and eventual death to Deborah K. Ikner and David Arthur Hodge, Sr., as an alleged result of improperly administered anesthesia by Petitioner, then a nurse anesthetist employed by these Respondents.
 "D. More especially, these Respondents aver that on November 3, 1978, during routine surgery, Mrs. Ikner suffered brain damage, resulting in a coma from which she never emerged and which eventually resulted in her death on January 26, 1981, all allegedly as a result of improperly administered anesthesia by Petitioner; that on March 2, 1979 (4 months after the calamitous Ikner surgery), during routine surgery Mr. Hodge suffered brain damage, resulting in a coma from which he never fully emerged and which eventually resulted in his death on December 3, 1979, all allegedly as a result of improperly administered anesthesia by Petitioner; and that on March 9, 1979 (6[sic] days after the second calamity), the Petitioner's employment *Page 941 
with these Respondents was terminated.
 "E. These Respondents aver that the termination of Petitioner's employment was lawful and proper.
 "F. These Respondents aver, and the trial judge so found in his protective order of March 10, 1982, that they would be unnecessarily and unduly prejudiced by allowing Petitioner to proceed with discovery on the eve of these multi-million dollar Ikner and Hodge
malpractice actions scheduled for trial on May 3, 1982, and on June 14, 1982, respectively, particularly since the trial of this action by Petitioner will not be reached until fall, 1982, at the earliest.
 "G. These Respondents aver that Petitioner will have ample time for discovery in her action subsequent to the anticipated trials or other resolutions of the pending Ikner and Hodge malpractice actions."
Petitioner's response to the answer is that the evidence she seeks is relevant, necessary and not privileged. Respondents' claim that discovery in the instant case would have harmful side effects in the two malpractice cases pending against them is not a sufficient showing to entitle them to the protective order. Petitioner further states that the mere fact that the respondents anticipated some difficulty in defending both suits is not an undue burden upon them as contemplated by Rule 26 (c), A.R.C.P.
Recognizing that the right to discovery is not unlimited and the trial court has broad powers to control discovery to prevent its abuse, nevertheless, the party who seeks a protective order has the burden of showing good cause why discovery should not be had.
 "Thus, to be entitled to a protective order, a movant must either show good cause why the objected-to deposition or production of documents would be unduly burdensome or expensive, oppressive, embarrassing or annoying, or that the subject matter sought to be discovered is privileged. The record before us is totally without `good cause shown.' Therefore, because the material sought is undisputably otherwise within the scope authorized above, it is discoverable unless it is `privileged.'"
Assured Investors Life Insurance Co. v. National UnionAssociates, Inc., 362 So.2d 228 (Ala. 1978).
There are no assertions in the motions for a protective order that would amount to a showing of good cause. In essence the defendants claim: (1) there are two other proceedings pending in which the same or similar issues may be involved; (2) the present action will not be brought to trial for a long time anyway; and (3) they would be unduly prejudiced in the other two actions by allowing discovery in this action. While undue prejudice was alleged, it was not proven. Mere difficulty in developing trial strategy is insufficient. We do not think these assertions indicate annoyance, embarrassment or oppression or show undue burden or expense as required by Rule 26 (c), A.R.C.P. Hence, to grant a protective order on the grounds asserted by the defendants is an abuse of discretion.
Due to the similarity of the Alabama and Federal Rules of Civil Procedure, a presumption arises that cases construing the Federal Rules are authority for construction of the Alabama Rules. Ex parte Rice, 265 Ala. 454, 92 So.2d 16 (1957). Seealso, Ex parte Huguley Water System, 282 Ala. 633,213 So.2d 799 (1968); and Smith v. Flynn, 275 Ala. 392, 155 So.2d 497
(1963).
In Salter v. Upjohn Company, 593 F.2d 649 (5th Cir. 1979), the trial judge denied the plaintiff's request to depose the president of Upjohn Company. The Fifth Circuit, in reviewing the trial judge's decision stated:
 "It is very unusual for a court to prohibit the taking of a deposition altogether and absent extraordinary circumstances, such an order would likely be in error. See 4 J. Moore J. Lucas, Moore's Federal Practice ¶ 26.69 (3d ed. 1976); 8 C. Wright A. Miller, Federal Practice 
Procedure § 2037 (1970)." *Page 942 
4 J. Moore, Moore's Federal Practice ¶ 26.69 (2d ed. 1982) provides:
 "In view of the general philosophy of full discovery of relevant facts and the broad statement of scope in Rule 26, and in view of the power of the court under Rules 26 (c) and 30 (d) to control the details of time, place, scope, and financing for the protection of the deponents and parties, it is fairly rare that it will be ordered that a deposition not be taken at all. All motions under these subparagraphs of the rule must be supported by `good cause' and a strong showing is required before a party will be denied entirely the right to take a deposition."
Here, not only has there been a denial of the taking of a deposition, but the denial of discovery altogether or at least a total postponement. There may be instances where the complete denial of discovery is justified, but based on the record before us, this is not such a case.
WRIT GRANTED.
TORBERT, C.J., and FAULKNER, EMBRY and ADAMS, JJ., concur.