PARKER, Justice.
Industrial Warehouse Services, Inc. ("IWS"), petitions this Court, in two separate petitions, for writs of mandamus directing the Bibb Circuit Court to vacate its order denying IWS's motion for a protective order concerning certain discovery requested by Chapman Wilson, as administrator of the estate of Janie Holt Wilson, deceased ("Wilson"), and by Olivia Taylor, as administrator of the estate of Willie James Taylor, Jr., deceased ("Taylor"), and to enter a protective order pursuant to Rule 26(c), Ala. R. Civ. P. We grant the petitions in part and deny them in part and issue the writs.
Facts and Procedural History
On April 20, 2017, a truck driven by Kenneth Oneal Herbert, an employee of IWS, collided with a vehicle driven by Willie James Taylor, Jr. ("Willie"); Janie Holt Wilson ("Janie") was a passenger in the vehicle. Willie and Janie died from injuries incurred as a result of the accident.
On May 3, 2017, Wilson sued IWS, among others, asserting various tort claims. On May 5, 2017, Taylor also sued IWS, among others, asserting various tort claims. The circuit court consolidated the cases.
Also on May 5, 2017, Wilson and Taylor requested that IWS respond to several interrogatories and produce numerous documents. Before responding to the discovery *1182 requests, IWS notified Wilson and Taylor that they had requested "materials from IWS ... that are proprietary to IWS and contain confidential information and/or trade secrets" and requested that the parties develop an agreed-upon protective order. The parties then engaged in negotiations over the language of the proposed protective order. IWS did not object to producing any of the requested discovery but sought to limit the use of the discovered information to the litigation of these consolidated cases. Wilson's and Taylor's trial attorneys, on the other hand, sought to use the discovery for purposes beyond the instant litigation. Specifically, Wilson's and Taylor's trial attorneys sought to be able to use the discovered information in any future litigation against IWS and to share the discovered information with other plaintiffs' attorneys. Ultimately, the parties could not agree on a protective order.
On August 25, 2017, Wilson and Taylor filed a motion to compel IWS to fully respond to their discovery requests. On the same day, IWS filed a motion for a protective order "with regard to the production of certain confidential and/or proprietary materials." Specifically, IWS sought to prohibit the dissemination by Wilson and Taylor of its bills of lading and its operations and safety manuals.[1] Although the rule is not cited by IWS, it appears that IWS sought a protective order pursuant to Rule 26(c)(7), Ala. R. Civ. P., which states:
"Upon motion by a party or by the person from whom discovery is sought, and for good cause shown, the court in which the action is pending ... may make any order that justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following: ... that a trade secret or other confidential research, development, or commercial information not be disclosed or be disclosed only in a designated way ....
On September 20, 2017, Wilson and Taylor filed a response to IWS's motion for a protective order arguing that IWS had failed to meet its burden of demonstrating good cause for the requested protective order. Wilson and Taylor argued that IWS had not demonstrated that the information in IWS's bills of lading and operations and safety manuals was actually "a trade secret or other confidential research, development, or commercial information."
On September 25, 2017, following a hearing at which the parties presented arguments, the circuit court denied IWS's motion for a protective order. The circuit court held that IWS "failed to establish 'good cause' under Rule 26(c) [, Ala. R. Civ. P.,] that the requested production would create ... an annoyance, embarrassment, oppression, or undue burden or expense or that the documents constitute confidential or proprietary information deserving of special protection." The circuit court noted that IWS "failed to produce any affidavits, testimony or other evidence suggesting that the records sought by [Wilson and Taylor] are somehow confidential and proprietary."
*1183 On October 2, 2017, IWS filed a motion requesting that the circuit court reconsider its ruling denying IWS's motion for a protective order. In support of its motion to reconsider, IWS attached the affidavit testimony of Phyllis Hahn, IWS's director of safety and human resources. Hahn's affidavit testimony indicated that IWS's bills of lading include some information that is subject to confidentiality agreements IWS has entered into with its clients. Hahn's affidavit testimony states that allowing IWS's clients' information on the bills of lading to be made public "could easily be interpreted by our clients as a breach of confidentiality." Hahn also states in her affidavit testimony that IWS's bills of lading are "essentially ... a client list" that, if made public, would allow IWS's competitors an unfair advantage. Hahn's affidavit testimony also indicates that IWS's operations and safety manuals are "created in-house" or "purchased from reputable trucking compliance companies" and "are incorporated into our particular business model and practice and, therefore, unique to our company." On October 4, 2017, Wilson and Taylor filed a response to IWS's motion to reconsider and a motion to strike Hahn's affidavit testimony as untimely.
On October 5, 2017, the circuit court denied IWS's motion to reconsider and struck Hahn's affidavit testimony. IWS filed its mandamus petitions with this Court on October 6, 2017.
Standard of Review
" ' " In Ex parte Norfolk Southern Ry., 897 So.2d 290 (Ala. 2004), this Court delineated the limited circumstances under which review of a discovery order is available by a petition for a writ of mandamus and the standard for that review in light of Ex parte Ocwen Federal Bank, FSB, 872 So.2d 810 (Ala. 2003) :
" ' " ' "Mandamus is an extraordinary remedy and will be granted only when there is '(1) a clear legal right in the petitioner to the order sought, (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so, (3) the lack of another adequate remedy, and (4) properly invoked jurisdiction of the court.' Ex parte Alfab, Inc., 586 So.2d 889, 891 (Ala. 1991). In Ex parte Ocwen Federal Bank, FSB, 872 So.2d 810 (Ala. 2003), this Court announced that it would no longer review discovery orders pursuant to extraordinary writs. However, we did identify four circumstances in which a discovery order may be reviewed by a petition for a writ of mandamus. Such circumstances arise (a) when a privilege is disregarded, see Ex parte Miltope Corp., 823 So.2d 640, 644-45 (Ala. 2001) ; (b) when a discovery order compels the production of patently irrelevant or duplicative documents the production of which clearly constitutes harassment or imposes a burden on the producing party far out of proportion to any benefit received by the requesting party, see, e.g., Ex parte Compass Bank, 686 So.2d 1135, 1138 (Ala. 1996) ; (c) when the trial court either imposes sanctions effectively precluding a decision on the merits or denies discovery going to a party's entire action or defense so that, in either event, the outcome of the case has been all but determined and the petitioner would be merely going through the motions of a trial to obtain an appeal; or (d) when the trial court impermissibly prevents the petitioner from making a record on the discovery issue so that an appellate court cannot review the effect of the trial court's alleged error. The burden rests on the petitioner to demonstrate *1184 that its petition presents such an exceptional case-that is, one in which an appeal is not an adequate remedy. See Ex parte Consolidated Publ'g Co., 601 So.2d 423, 426 (Ala. 1992).' "
" ' " 897 So.2d at 291-92 (quoting Ex parte Dillard Dep't Stores, Inc., 879 So.2d 1134, 1136-37 (Ala. 2003) ).' "
" Ex parte Nationwide Mut. Ins. Co., 990 So.2d 355, 360 (Ala. 2008) (quoting Ex parte Orkin, Inc., 960 So.2d 635, 638 (Ala. 2006) )."
Ex parte Bosch LLC, 177 So.3d 884, 890-91 (Ala. 2014). IWS argues that the circuit court's order denying its motion for a protective order pertains to a trade-secret privilege and thus is reviewable under category (a) ("[A] discovery order may be reviewed by a petition for a writ of mandamus ... when a privilege is disregarded ....").
Further, this Court stated in Ex parte Compass Bank, 686 So.2d 1135, 1137 (Ala. 1996) :
"Because discovery involves a considerable amount of discretion on the part of the trial court, the standard this Court will apply on mandamus review is whether there has been a clear showing that the trial court [exceeded] its discretion. Ex parte Clarke, 582 So.2d 1064, 1067 (Ala. 1991) ; Ex parte McTier, 414 So.2d 460 (Ala. 1982)."
Discussion
The issue before this Court is whether the circuit court exceeded its discretion in denying IWS's motion for a protective order. Rule 26(c), Ala. R. Civ. P., quoted earlier, vests the circuit court with authority to enter a protective order. Rule 26(c)(7) allows for a protective order to be entered to protect trade secrets or other confidential information. As set forth in Rule 26(c)(7), a protective order may be entered only upon a showing of good cause for the protection sought. In Ex parte Cuna Mutual Insurance Society, 507 So.2d 1328, 1329 (Ala. 1987), this Court stated that "it is the movant's burden to show good cause why the protective order should be granted." IWS, as the movant, had the burden of demonstrating good cause for the protective order it seeks. In the present case, the circuit court held that IWS "failed to establish 'good cause' under Rule 26(c) [, Ala. R. Civ. P.,] that the requested production would create ... an annoyance, embarrassment, oppression, or undue burden or expense or that the documents constitute confidential or proprietary information deserving of special protection."
IWS argues that it presented good cause for the protective order because, IWS argues, the discovery sought by Wilson and Taylor contains confidential information and trade secrets. Specifically, IWS argues that the bills of lading contain confidential client information and that the operations and safety manuals, "prepared or obtained at cost and tailored specifically for [the] benefit of IWS's business operation, certainly qualify as proprietary trade secrets."
Section 8-27-2(1), Ala. Code 1975, a part of the Alabama Trade Secrets Act, defines a "trade secret" as information that
"a. [i]s used or intended for use in a trade or business;
"b. [i]s included or embodied in a formula, pattern, compilation, computer software, drawing, device, method, technique, or process;
"c. [i]s not publicly known and is not generally known in the trade or business of the person asserting that it is a trade secret;
"d. [c]annot be readily ascertained or derived from publicly available information;
*1185 "e. [i]s the subject of efforts that are reasonable under the circumstances to maintain its secrecy; and
"f. [h]as significant economic value."
IWS argues that the information in its bills of lading and operations and safety manuals satisfies the definition of trade secret in § 8-27-2(1).
Concerning the information in IWS's bills of lading, IWS explains that, if the information contained in the bills of lading is disseminated, IWS's competitors would be able to identify its clients, its billing information, its billing rates, what it was hauling for its clients, to where it was delivering, etc. IWS notes that this information is, in fact, the subject of confidentiality agreements between it and its clients, which prohibit IWS from disclosing this information. In its amicus brief, the Alabama Trucking Association, Inc. ("ATA"), states the following concerning information contained on a trucking company's bills of lading:
"If IWS's competitors are allowed to obtain unredacted bills of lading ..., they will be able to determine not only the identity of IWS's customers, but also the logistics it employs to transport its freight, the prices it and its customers charge, the rates of transportation, what type of freight is being hauled, how much freight is being hauled, the frequency of the shipments, how IWS plans its trips, etc."[2]
ATA's amicus brief, at p. 7.
Concerning the information in IWS's operations and safety manuals, IWS states that it expended considerable time, effort, and money in developing its business model, which, it says, its operations and safety manuals are part of. IWS admits, as Wilson and Taylor argue, that the applicable standards of operations and safety within the trucking industry are readily ascertainable.[3] IWS argues, however, that "the particular manner in which IWS incorporates that information into its business model is specifically unique to IWS." IWS's reply brief, at p. 6. In its amicus brief, ATA states that dissemination of the information contained in IWS's operations and safety manuals "will permit the public and IWS's competitors to exploit IWS's business strategies and will give its competitors an unfair advantage in the highly competitive Alabama trucking industry." ATA's amicus brief, at pp. 7-8.
In response, Wilson and Taylor argue that the information in IWS's bills of lading and operations and safety manuals is not a trade secret or confidential because, they appear to argue, the information is publicly known, can be readily ascertained from public information, and/or is not secreted from the public. Specifically, Wilson and Taylor argue that the information does not contain trade secrets because (1) IWS is required by federal law to report the information from these sources to the Federal Motor Carrier Safety Administration ("the FMCSA") and (2) IWS makes the information available to its employees. It appears that Wilson and Taylor are arguing that the requested discovery is not *1186 a trade secret based on § 8-27-2(1) c, d, and/or e; Wilson and Taylor do not make any argument concerning § 8-27-2(1) a, b, or f.[4]
We will address Wilson and Taylor's arguments in turn. First, IWS readily admits that it must report some information contained in its bills of lading and operations and safety manuals to the FMCSA. However, IWS notes that the information it reports to the FMCSA is not made public. Wilson and Taylor have not directed this Court's attention to anything before us indicating that the FMCSA makes the information reported to it available to the public. Further, IWS is required by federal law to report the information to the FMCSA, and Wilson and Taylor have not directed this Court's attention to anything indicating that IWS may avoid such reporting. Accordingly, IWS is doing all it reasonably can under the circumstances to keep the information secreted from the public. IWS even entered into confidentiality agreements with its clients that prohibit the public disclosure of the information in its bills of lading. We do not find this argument convincing.
Within this argument, however, Wilson and Taylor specifically argue that the information in IWS's operations and safety manuals can be readily ascertained from public information. Wilson and Taylor assert that the information in IWS's operations and safety manuals is "used to teach commercial drivers how to operate a vehicle" and that the information "will reference codes and regulations which are uniform throughout the United States and common in the trucking industry." Wilson and Taylor's response, at p. 14. Wilson and Taylor note that "IWS has made no showing and offered no explanation how training manuals could be the subject of a trade secret or why it would be detrimental for the public to know how [IWS] trains its drivers." Id., at p. 15.
We find this particular argument concerning the information in IWS's operations and safety manuals convincing. IWS acknowledges that the information in its operations and safety manuals is, in part, based on regulations applicable to the entire trucking industry. IWS argues that the manner in which it incorporates those regulations constitutes a trade secret. However, other than this general assertion, IWS has not offered any explanation as to how the information in its operations and safety manuals, which, in part, is readily ascertained from publicly available information, constitutes a trade secret. We conclude that IWS has not met its heavy burden of demonstrating that the circuit court exceeded its discretion in concluding that the information in IWS's operations and safety manuals does not constitute "confidential ... commercial information" under Rule 26(c)(7).
Second, Wilson and Taylor argue that the information in both IWS's bills of lading and its operations and safety manuals is not a trade secret because IWS shares the information with its employees. Wilson *1187 and Taylor have not directed this Court's attention to any authority indicating that a company loses the benefit of the trade-secret privilege by sharing the privileged information with its employees. This argument is not convincing.
We conclude that IWS has demonstrated that the information in its bills of lading is confidential and satisfies the definition of a trade secret set forth in § 8-27-2(1). IWS has demonstrated good cause for a protective order pursuant to Rule 26(c)(7) concerning the information in IWS's bills of lading consisting of trade secrets and confidential information. However, IWS has not demonstrated that the information in IWS's operations and safety manuals is confidential or that it satisfies the definition of a trade secret set forth in § 8-27-2(1).
Wilson and Taylor also argue that every detail of the underlying litigation, including IWS's trade secrets and confidential information, should be made public. Wilson and Taylor argue that they "have every right to have the public made aware of IWS's actions in their dangerous and reckless operation of a commercial motor vehicle on the highways of Alabama." Wilson and Taylor's response, at p. 17. IWS is not requesting that all details of the trial be kept from the public, only its trade secrets and confidential information. IWS has not requested that the details of the accident be suppressed, and we see no reason that they be suppressed. However, IWS has demonstrated that it has a right to a protective order concerning the information in its bills of lading.
We also note that Wilson and Taylor make much of the fact that, because the circuit court struck Hahn's affidavit testimony, IWS presented no evidence in support of its argument that the information in IWS's bills of lading contains trade secrets.[5] However, Wilson and Taylor have not directed this Court's attention to any relevant authority indicating that a party seeking a protective order pursuant to Rule 26(c)(7)must present evidence to support the assertion that the discovery sought contains a trade secret or confidential information. Wilson and Taylor do cite Ex parte Scott, 414 So.2d 939 (Ala. 1982), in making their argument; however, that case does not support their position.
In Ex parte Scott, a circuit court entered a protective order prohibiting the production of discovery. The party seeking the protective order did not present evidence in support of its motion for a protective order, only arguments. On mandamus review, this Court determined that the party seeking the protective order pursuant to Rule 26(c) failed to prove that it would suffer prejudice if it was required to produce the requested discovery. This Court did not hold that the circuit court erred in granting the protective order because the Rule 26(c) movant had failed to present evidence in support of its motion. Rather, this Court specifically stated:
"There are no assertions in the motions for a protective order that would amount to a showing of good cause. ... We do not think these assertions indicate annoyance, embarrassment or oppression or show undue burden or expense as required by Rule 26(c), A[la]. R. C[iv]. P. Hence, to grant a protective order on the grounds asserted by the defendants is an abuse of discretion."
*1188 Ex parte Scott, 414 So.2d at 941 (emphasis added). This Court considered that mere assertions could be sufficient to support a motion for a protective order but concluded that, under the facts of that case, the movant's assertions did not satisfy its burden of demonstrating good cause for a protective order. Ex parte Scott does not support Wilson and Taylor's argument.
A party moving for a protective order may try to support its motion with assertions alone. Certainly, a movant for a protective order may choose to present additional evidence concerning the confidential nature of the contested discovery; however, such evidentiary submissions are not required to demonstrate the good cause necessary to support a protective order. A circuit court may determine that a movant's assertions satisfy its burden. Of course, the movant's assertions may be probed at a hearing on the motion, as the circuit court did in the present case, and the contested discovery may even be produced for an in camera review by the circuit court to confirm the veracity of the assertions made by the movant. However, a movant's failure to present evidence in support of the motion for a protective order is not, in and of itself, a reason to deny such a motion. Wilson and Taylor's argument that IWS was required to present evidence proving that the requested discovery contained information that was a trade secret or confidential is not convincing.
Conclusion
IWS has demonstrated a clear legal right to a writ of mandamus directing the Bibb Circuit Court to vacate that portion of its order denying IWS's motion for a protective order regarding the information contained in IWS's bills of lading and to enter an order pursuant to Rule 26(c)(7) concerning that information, and as to that portion of the order its petitions are granted. The circuit court may use its discretion in crafting a protective order that provides adequate protection for the trade secrets contained in the discovery produced by IWS. However, IWS has not demonstrated a clear legal right to a writ of mandamus directing the circuit court to vacate that portion of its order denying IWS's motion for a protective order concerning the information contained in IWS's operations and safety manuals, and as to that portion of the circuit court's order, its petitions are denied.[6]
1170013-PETITION GRANTED IN PART AND DENIED IN PART; WRIT ISSUED.
1170087-PETITION GRANTED IN PART AND DENIED IN PART; WRIT ISSUED.
Main and Sellers, JJ., concur.
Stuart, C.J., concurs in the result.
Bolin, Wise, and Mendheim, JJ., concur in part and dissent in part.
Shaw and Bryan, JJ., concur in the result in part and dissent in part.

It appears that IWS sought to protect information found in numerous of its manuals and handbooks covering a variety of topics. However, the parties have not directed this Court's attention to anything in the materials before us indicating exactly which of IWS's manuals and handbooks contain information IWS seeks to protect. Nor have the parties specified the content of the manuals and handbooks at issue. Our general reference to "operations and safety manuals" references all manuals and handbooks at issue in the underlying proceeding.

In the circuit court's order of September 25, 2017, denying IWS's motion for a protective order, the circuit court did allow IWS to "redact any incremental billing information contained on its bills of lading." However, IWS notes in its reply brief that " '[i]ncremental billing information' is not, to IWS's knowledge, a term of art and does not have any specifically identifiable meaning." IWS's reply brief, at p. 10. It is not clear what information on IWS's bills of lading may be redacted or if such redactions would adequately protect the allegedly confidential material or trade secrets.

In fact, IWS acknowledged that "not every page of [the operations and safety manuals] may be unique in its contents."

We note that, by using the conjunctive "and" to separate its subsections, § 8-27-2(1) requires that, in order to be considered a trade secret, the information at issue must satisfy all of the subsections-a through f. See Bell Aerospace Servs., Inc. v. U.S. Aero Servs., Inc., 690 F.Supp.2d 1267, 1273 (M.D. Ala. 2010) ("[The party asserting the trade-secret privilege] has the burden of establishing each element [of § 8-27-2(1), Ala. Code 1975,] for the information in question to be considered a trade secret. Public Systems, Inc. v. Towry, 587 So.2d 969, 971 (Ala. 1991)."). Therefore, if Wilson and Taylor succeed in demonstrating that the information they seek in the present case does not satisfy any one of the subsections in § 8-27-2(1), then the information does not meet the definition of a trade secret.

IWS argues that the circuit court erred in striking Hahn's affidavit. However, we will not address this issue because IWS has not demonstrated that the circuit court's striking of Hahn's affidavit is a discovery order that may be reviewed by a petition for a writ of mandamus. See Ex parte Bosch, supra.

We note that IWS also appears to argue that the circuit court exceeded its discretion by requiring IWS to "produce documents as far back as six months prior to the date of the accident." IWS's petitions, at p. 24. However, IWS has not demonstrated that this scope-of-discovery issue is appropriate for mandamus review, and, thus, we do not address it. See Ex parte Bosch, supra.